UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSE HECTOR MERINO ACEVEDO,

                              Plaintiff,

          v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

_____

**DECISION AND ORDER**

12-cv-6536 EAW

## I.    INTRODUCTION

*Pro se* plaintiff Jose Hector Merino Acevedo ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying his application for Social Security Disability benefits ("SSD"). (Dkt. 1). Presently before the Court is the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 9). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. As a result, judgment is entered in favor of the Commissioner and Plaintiff's complaint is dismissed.

---

[1]    Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, the Court hereby amends the caption of the case *sua sponte* to reflect that Ms. Colvin is the Defendant.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Overview

On December 1, 2008, Plaintiff filed an application for SSD, alleging a back injury beginning April 1, 2007. (Transcript of Administrative Record (hereinafter "Tr.") at 225-30, 249). At the time of the hearing, Plaintiff was 39 years old, had a ninth grade education, and previously worked in construction. (Tr. 56-57, 257-58). Plaintiff is from El Salvador, and at the time of the hearing, Plaintiff had been in the United States for 11 years. (Tr. 56-57). Plaintiff spoke little English. (Tr. 57).

Plaintiff's initial request for SSD was denied on February 6, 2009. (Tr. 105). Plaintiff timely requested a hearing and appeared, without counsel, to testify at the hearing held on April 29, 2010, before Administrative Law Judge ("ALJ") Thomas Mercer Ray. (Tr. 7, 47-73).[2] Plaintiff was assisted by a Spanish translator. (*Id.*). Vocational expert ("VE") Kathleen Sanbeck also testified at the hearing. (Tr. 65-70).

On February 17, 2011, the ALJ issued a decision determining that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 8-22). In making this determination, the ALJ found that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 22). The Appeals Council denied review on August 7, 2012, and the ALJ's decision

---

[2] This hearing was the third scheduled hearing. At the October 19, 2010 hearing, Plaintiff requested the opportunity to seek assistance of counsel, and the hearing was adjourned. (Tr. 38). Plaintiff did not appear for the second hearing scheduled for January 12, 2011. (Tr. 41-46).

became the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed this action on October 3, 2012. (Dkt. 1).

### B.   Non-Medical Evidence

#### 1.   Plaintiff's Testimony

Plaintiff testified that he injured his back while working with an air hammer on a construction site. (Tr. 58). He received Workers' Compensation benefits for three years following the incident. (Tr. 58-59). Plaintiff testified that his back pain prevents him from working. (Tr. 59). According to Plaintiff, he experiences permanent pain in his back and has shaking in his legs. (Tr. 58). Plaintiff reported a "pinching" feeling when he bends over, showers, or brushes his teeth. (Tr. 61). He indicated that he has difficulty sleeping, but that over the counter pain medications, such as Advil or Tylenol, relieve the pain. (Tr. 61-62). Additionally, Plaintiff stated that he has diabetes and injects himself with insulin. (Tr. 61). Plaintiff testified that he lives on a first floor apartment with friends. (Tr. 60-61). Plaintiff stated that he is able to cook, clean, drive, dress, and bathe independently. (Tr. 64). Additionally, Plaintiff said that he did not think it would be "impossible" for him to work at a job where he could "sit most of the time for eight hours a day," indicating that "if it were that job, I would try to do it, and I will try to move when I feel bad, when I feel pain." (Tr. 70).

#### 2.   Testimony of the Vocational Expert

VE Sanbeck testified that Plaintiff's past relevant work as a construction laborer is considered an unskilled position performed at a very heavy exertional level. (Tr. 66-67). She opined that a hypothetical person with the same age, residual functional capacity

("RFC"), educational history, and vocational profile as Plaintiff could not perform Plaintiff's past relevant work. (Tr. 68). However, the VE identified other jobs existing in the national economy that Plaintiff could perform, including laundry folder, finish inspector, and small product assembler. (Tr. 68-69). The VE noted that adding illiteracy to the hypothetical profile would reduce the potential job openings by approximately ten percent. (Tr. 69-70).

### 3.   Plaintiff's Self-Reported Disability Reports and Functional Capacity Assessments

In one undated Disability Report, Plaintiff stated that he became disabled on April 1, 2007, because of a "Car accident back injury" that led to ". . . difficulty bending, lifting, [and] standing up for long periods of time." (Tr. 249). Plaintiff indicated that he stopped working on his alleged disability onset date because he had difficulty bending, lifting, and standing for long periods of time. (*Id.*). Plaintiff also stated that he stopped working because he was laid off after the light duty work that his employer provided for three months was no longer available. (*Id.*).

On January 19, 2009, Plaintiff completed a Function Report. (Tr. 265). In this report, Plaintiff indicated that a typical day would begin with a shower and back exercises, followed by studying English, cleaning his room, and taking an early afternoon walk around his neighborhood. (*Id.*). Plaintiff stated that he could clean, shave, eat, and generally care for himself, albeit with some back pain. (Tr. 268). Plaintiff claimed that he could not work or play soccer and that everyday tasks would take longer because of his back pain. (Tr. 266). Plaintiff indicated that back pain would wake him up in the

night. (*Id.*). Plaintiff claimed that he could not lift more than ten pounds, stand for more than 25 minutes, or walk for more than 30 minutes without experiencing pain. (Tr. 270). However, Plaintiff stated that he did walk, use public transportation, drive, shop, and prepare meals. (Tr. 268). Plaintiff indicated that he read, watched sports on television, and listened to music for enjoyment. (Tr. 269).

On January 19, 2009, Plaintiff completed a Pain Questionnaire. (Tr. 274). Plaintiff complained of a stabbing pain in his lower back whenever he bent, knelt down, or tried to pick items up off of the floor. (Tr. 274-75). Plaintiff claimed the pain would last for approximately 10 minutes and go away slowly. (Tr. 274). Plaintiff did indicate that Advil provided pain relief. (Tr. 275).

### 4.     Workers' Compensation Order

On May 23, 2008, Workers' Compensation ALJ Gerald Roberson issued a Compensation Order finding that Plaintiff was entitled to benefits for a "temporary and total disability with a total wage loss" for the period of December 4, 2006, through January 8, 2007 for "differential incurred when [Plaintiff] returned to light duty and payment for loss of wages due to attending medical appointment." (Tr. 220). ALJ Roberson relied on the opinions of insurance physician Dr. Gardiner and the physical therapists from Rehab At Work to find that Plaintiff was self-limiting, and "voluntarily limited his income by failing to accept employment within his physical abilities. . . ." (Tr. 213-14, 220). ALJ Roberson added that Plaintiff testified at his April 10, 2008 workers' compensation hearing that he could perform the duties of a light work

assignment. (Tr. 215). Further, ALJ Roberson indicated that Plaintiff briefly returned to light duty work with his employer but was terminated due to insubordination. (Tr. 210).[3]

### C.    Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On January 30, 2007, Plaintiff started a four-week work hardening program with Rehab at Work after Dr. Mark Scheer, M.D. referred Plaintiff to the program. (Tr. 297, 319). The goal of the treatment was to enable Plaintiff to return to heavy exertional work. (Tr. 321).

Physical therapist Valerie Center performed an initial functional capacity evaluation on January 30, 2007, and found that Plaintiff made a "submax effort" for numerous tasks and was "self-limiting" due to his low back pain. (Tr. 319). Ms. Center opined that Plaintiff was able to meet the physical demands of a light exertional level for an eight hour workday. (*Id.*). Because of Plaintiff's self-limiting behavior, Ms. Center noted that Plaintiff's performance was not a valid representation of his true functional capacity. (Tr. 321). She further noted that Plaintiff perceived his abilities as less than sedentary, but was performing within a light physical demand level. (Tr. 320). Ms. Center indicated that Plaintiff had full lumbar flexion, did not show signs of leg trembling, and "demonstrated 10 out of 19 possible findings for Symptom Magnification,

---

[3]     The Court notes that this indication contradicts Plaintiff's statement that he was terminated because there was insufficient light duty work. (Tr. 249).

which is within the Moderate range and indicates a potential to improve." (Tr. 321). Ms. Center reported that Plaintiff was managing his symptoms with Advil and rest. (Tr. 320).

After his first session with Rehab At Work, physical therapists Angie Teymourian and Carolina Diaz indicated that Plaintiff delivered "submax effort" in performing tasks. (Tr. 317). However, Ms. Teymourian and Ms. Diaz noted that Plaintiff had "potential to improve" in three of the four areas of symptom management and in all three areas of symptom magnification. (*Id.*). Further, they noted that Plaintiff "demonstrates qualities necessary for successful placement in gainful employment." (Tr. 318).

Following the first full week of the program, Ms. Teymourian and Ms. Diaz reported that Plaintiff had gained the ability to lift an additional 10 pounds, carry an additional 10 pounds, and lift an additional six pounds over his head. (Tr. 315). The physical therapists noted no musculoskeletal deficits, but opined that Plaintiff was still magnifying his symptoms by self-limiting tasks and utilizing poor body mechanics. (*Id.*).

At the conclusion of the second week of the program, Ms. Teymourian and Ms. Diaz noted that Plaintiff had gained an additional seven pounds in all lifting and carrying tasks except for overhead lifting, where he gained five pounds. (Tr. 313). The physical therapists identified no musculoskeletal deficits or tenderness. (*Id.*). Ms. Teymourian and Ms. Diaz opined that Plaintiff "continues to self[-]limit activities at the onset of pain and thus he is not demonstrating his true maximums." (*Id.*). They indicated that Plaintiff had the "potential to improve" in all areas of symptom management, symptom magnification, and worker traits. (Tr. 314).

At the end of the third week of the program, Ms. Teymourian and Ms. Diaz noted that Plaintiff had lifted a maximum of 35 pounds and frequently lifted up to 17.5 pounds. (Tr. 311).  The physical therapists remarked that Plaintiff's lifting and carrying abilities now placed him at a medium exertional level.  (*Id.*).  The therapists again stated that Plaintiff "[d]oes not appear to be giving maximum effort as he self[-]limits tasks due to 'weakness.'" (*Id.*).

After the fourth and final week of the program, Ms. Teymourian and Ms. Diaz indicated that Plaintiff continued to lift 17.5 to 35 pounds, and demonstrated no notable deficits in strength or range of motion other than a slight functional strength deficit in the trunk and legs. (Tr. 309).  The physical therapists made a note of Plaintiff's self-limiting behaviors. (*Id.*).  Plaintiff was discharged from the program having advanced from the light to the medium physical demand level for at least three hours of workplace tolerance in addition to "working modified duty." (Tr. 307).

On September 12, 2007, Plaintiff treated with Dr. Rafael Lopez Steuart, M.D. ("Dr. Lopez"),[4] an orthopedic surgeon, complaining of lower back pain. (Tr. 349).  Dr. Lopez noted reduced lumbar flexion of 50 degrees with tenderness and spasm, but no motor deficits. (*Id.*).[5]  Dr. Lopez assessed Plaintiff with "[p]ersistent diskogenic/facet

---

[4]    Dr. Rafael Lopez Steuart at times signs his treatment notes as "Rafael Lopez Steuart, M.D." (*see, e.g.,* Tr. 336-37, 343-49), and at other times signs his name as "Rafael A. Lopez, M.D., F.A.C.S." (*see, e.g.,* Tr. 338-42).  The ALJ did not notice that "Dr. Stuart[sic]" and "Dr. Lopez" are the same person. (Tr. 20).  As discussed *infra*, this error is harmless.

[5]    Normal range of motion for lumbar flexion is approximately 80-90 degrees, and the normal range of motion for lumbar extension is approximately 20-25 degrees. *See*

syndrome" and declared Plaintiff disabled. (*Id.*). He prescribed "etodolac," "ranitidine," and "carisoprodol" for the pain and spasms. (*Id.*). Plaintiff again treated with Dr. Lopez on October 3, 2007, and the doctor noted that Plaintiff was tolerating medication well, but was considered disabled, with an improved lumbar flexion of 60 degrees. (Tr. 347).

On October 8, 2007, Dr. Lopez diagnosed Plaintiff with facet syndrome and administered facet joint injections that were well-tolerated by Plaintiff. (Tr. 346). On October 18, 2007, Plaintiff informed Dr. Lopez that he experienced 20% improvement following the facet injections. (Tr. 345). Dr. Lopez recommended that Plaintiff adhere to the prescribed medication regimen and noted no motor deficits or tension signs, despite lumbar flexion of 45 degrees. (*Id.*).

In treatment notes dated November 15, 2007, Dr. Lopez noted Plaintiff's continued reports of pain as well as tenderness and spasm with lumbar flexion of 60 degrees. (Tr. 343). Dr. Lopez opined that Plaintiff was "not fit for duty." (*Id.*). Dr. Lopez produced nearly identical treatment notes on December 12, 2007. (Tr. 342).

On January 10, 2008, Dr. Lopez noted "worsening symptomatology," but that additional diagnostic studies were not approved. (Tr. 341). Dr. Lopez opined that Plaintiff was "not fit for duty." (*Id.*). In treatment notes dated February 14, 2008, Dr. Lopez stated that Plaintiff was a "reasonable candidate for surgery." (Tr. 340). The

---

*Son Oh v. Murray*, No. 07-CV-5145(CPS), 2009 WL 605796, at \*6 n.7 (E.D.N.Y. Mar. 9, 2009) (quoting normal ranges cited by Plaintiff's physician as 80 and 25 degrees, respectively); *Walker v. Astrue*, No. 06-cv-05978 (NGG), 2009 WL 2252737, at \*5 (E.D.N.Y. July 28, 2009) (indicating that normal range is 90 and 20 degrees, respectively).

doctor noted tenderness and spasm but no motor deficits and recommended Plaintiff continue the prescribed pain medication regimen. (*Id.*).

In one page of undated treatment notes, Dr. Lopez noted "persistent and worsening symptomatology." (Tr. 339). Dr. Lopez assessed Plaintiff with a herniated disc at L 5-5, and a small disc herniation at L5-S1, which Dr. Lopez opined was caused by Plaintiff's work injury. (*Id.*). Dr. Lopez recommended surgery and further stated "[i]n my opinion within a reasonable degree of medical certainty, the patient's condition is regressing and the surgery is indicated to reduce his pain and improve his flexion and function." (*Id.*).

On November 6, 2008, Plaintiff returned to Dr. Lopez, complaining of "persistent moderate to severe lower back pain" and reporting "significant limitations in activities of daily living." (Tr. 338). Dr. Lopez noted no significant neurologic deficits, but found that "straight leg raising test causes back pain and buttock pain bilaterally." (*Id.*). Dr. Lopez stated that Plaintiff stood with a "slight list" and had difficulty "heel toe walking and squatting," but that Plaintiff had lumbar flexion measured at 65 degrees. (*Id.*). Dr. Lopez assessed Plaintiff with a multilevel herniated lumbar disc as a result of a work injury, recommended the use of over the counter anti-inflammatory medications, and prescribed Percoset for pain management. (*Id.*). Dr. Lopez admonished the insurance doctor for suggesting that Plaintiff was magnifying his symptoms and stated "this recommendation lacks empathy, compassion, and appropriate medical judgment." (*Id.*).

On December 17, 2008, Dr. Lopez examined Plaintiff and noted that Plaintiff reported persistent back pain but was tolerating ibuprofen well. (Tr. 337). Surgery was recommended but denied by Plaintiff's workers' compensation carrier. (*Id.*). Dr. Lopez

noted no neurologic deficits, but found that movement produced pain for Plaintiff, who had lumbar flexion of 60 degrees. (*Id.*). Dr. Lopez further stated that "[c]urrent management with activity restriction, anti-inflammatory medication, the controlled administration of narcotics, intermittent injections and physical methods have been successful in controlling symptomatology and maintaining the current level of functioning." (*Id.*).

On January 15, 2009, Dr. Lopez examined Plaintiff and assessed "[h]erniated lumbar disc secondary to work injury of March 31, 2004.   Surgery has been recommended but not approved by his workers['] compensation carrier." (Tr. 336). Dr. Lopez noted Plaintiff's pain, but found "no significant neurologic deficits." (*Id.*). Plaintiff's lumbosacral flexion improved to 70 degrees, and extension improved to 20 degrees. (*Id.*). Dr. Lopez administered a trigger point injection and recommended use of over the counter pain medications during the day supplemented by Percocet® as needed for pain. (*Id.*). Dr. Lopez concluded that Plaintiff was disabled and unable to work, and noted that Plaintiff's activities of daily living were restricted. (*Id.*).

## III. DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3).  "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ.

6451(PAC)(SN), 2014 WL 1265918, at \*9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). Title 42 U.S.C. section 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence on the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (stating that a reviewing Court does not examine a benefits case *de novo*). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering

the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

"When, as here, the Court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is sufficient basis for granting the motion." *Emerson*, 2014 WL 1265918, at *9. *See Wellington v. Astrue,* No. 12 Civ. 03523(KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (recognizing, in an action appealing the denial of disability benefits, a court's obligation to review the record before granting an unopposed motion for judgment on the pleadings). "Although . . . failure to respond 'may allow the district court to accept the movant's factual assertions as true, the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law.'" *McDowell v. Commissioner,* No. 08-CV-1783 (NGG), 2010 WL 5026745, at *1 (E.D.N.Y. 2010) (quoting *Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004)). "*Pro se* litigants 'are entitled to a liberal construction of their pleadings,' and therefore their complaints 'should be read to raise the strongest arguments that they suggest.'" *Emerson*, 2014 WL 1265918, at *9 (quoting *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)); *see also Alvarez v. Barnhart,* No. 03 Civ. 08471(RWS), 2005 WL 78591, at *1 (S.D.N.Y. Jan. 12, 2005) (describing liberal *pro se* standard in reviewing denial of disability benefits).

### B.    Determining Disability Under the Social Security Act

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin*, No. 13-CV-638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014).   A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques."   42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).   The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act.   *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002).   The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis.   If the ALJ makes a determination at any step, the evaluation will not continue to the next step.   20 C.F.R. § 416.920(a)(4).   The following five steps are followed:

1.     The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.     If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.     If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.   If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

### C.    Analysis of the ALJ's Sequential Evaluation

Reading Plaintiff's complaint liberally, Plaintiff appears to contest the ALJ's RFC determination and credibility analysis, stating: "[b]ack pain makes it very difficult to perform most work related tasks." (Dkt. 1 at 1).

### 1.    Step One: Substantial Gainful Activity

In applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity for the relevant time period. (Tr. 13-14).   The parties do not contest this determination and it is supported by substantial evidence.   The ALJ noted that Plaintiff received an award of workers' compensation benefits in May 2008 as a result of Plaintiff's back injury. (Tr. 14).

### 2.    Step Two: Severe Impairments

At the second step, the ALJ determined that Plaintiff's diabetes and degenerative disc disease were severe impairments.  (Tr. 14).   These findings are uncontested and supported by substantial evidence.

### 3.    Step Three: Listed Impairments

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment – specifically Listings 1.04 and 9.08 – of 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 14).   He reached this conclusion because, although the medical evidence established degenerative disc disease, it did not satisfy the criteria with regard to "evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (Tr. 14); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04; *See Corson v. Astrue*, 601 F. Supp. 2d 515, 526 (W.D.N.Y. 2009) (stating the criteria to satisfy Listing § 1.04).   Additionally, Plaintiff's medical records did not document the specific impairments required to satisfy the listing-level diabetes mellitus diagnosis. (*Id.*).[6]   These findings are uncontested and are supported by substantial evidence.

### 4.    Step Four: The ALJ's Determination of RFC

The ALJ determined that Plaintiff had the residual functional capacity:

> to perform light work as defined in CFR 404.1567(b) except the claimant
> can frequently lift or carry 10 pounds, and lift or carry 20 pounds on an
> occasional basis.  The claimant retains the ability to sit for six hours or
> stand and/or walk for four hours in an eight-hour day.  The ability to
> push/pull with the upper and lower extremities is unlimited, other than as

---

[6]    "Listing section 9.08 requires a diagnosis of diabetes mellitus with A) neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station; B) acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests; or C) retinitis proliferans." (Tr. 14); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08; *see Farnham v. Astrue*, 832 F. Supp. 2d 243, 262 (W.D.N.Y. 2011) (stating the criteria required to satisfy Listing § 9.08).

shown for lift and carry. The claimant can stoop, kneel, crouch, crawl, balance, and climb stairs or ramps on an occasional basis, but must never climb ladders, ropes, or scaffolds.

(Tr. 14). Accordingly, at the fourth step, the ALJ found that Plaintiff could not perform his past relevant work in the construction industry. (Tr. 21).

### i.     Substantial Evidence

The medical evidence consisted of treatment notes and opinions of Plaintiff's treating orthopedic surgeon and physical therapists from the Rehab At Work program relating to Plaintiff's workers' compensation claim.

Treating physicians "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(C)(2). The "treating physician rule" requires the ALJ to give "controlling weight" to the opinion of a claimant's treating physician "on the issue(s) of the nature and severity of [the claimant's] impairments . . . [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  An ALJ does not have to explicitly walk through these factors, so long as the Court can "conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight she [gave] to the treating source's opinion." *Id.* (quotation omitted).

In the instant case, the ALJ accorded "less weight" to Dr. Lopez, Plaintiff's treating orthopedic surgeon, and assigned "the most significant weight" to the opinions of the therapists that conducted Plaintiff's work hardening program.  (Tr. 21).  The ALJ explained that this shifting in the assignment of weight was due to the "better reasoning employed in rendering [the therapists'] well-documented assessments." (*Id.*).

Specifically, the ALJ noted that, although Dr. Lopez was Plaintiff's treating physician and had "specialized training and professional qualifications as an orthopedic surgeon," Dr. Lopez did not discuss Plaintiff's functional abilities in rendering his opinion that Plaintiff was "totally disabled" from September 2007 to January 2009.  (Tr. 20; 336-49).  The ultimate determination as to whether or not an individual is disabled is a determination left to the Commissioner.  20 C.F.R. § 404.1527(d)(1); *Williams v. Comm'r of Soc. Sec.*, 423 F. Supp. 2d 77, 83 (W.D.N.Y. 2006) ("A treating source's statement that a plaintiff 'is disabled,' however, is not considered a 'medical opinion' under the treating physician's rule, and is not entitled to controlling weight because it represents an opinion on an issue reserved to the Commissioner.").[7]  Absent a discussion

[7]    The Court notes that Dr. Lopez provided his opinions while contemplating Plaintiff's workers' compensation claim.  The standard for total or partial disability in a workers' compensation claim differs from the standard of disability set forth by the Social Security Act.  *See Kara v. Apfel*, 11 F. Supp. 2d 375, 380 (S.D.N.Y. 1998) (noting

of Plaintiff's functional abilities, the opinions of Dr. Lopez offered little information for

the ALJ to consider in conducting his RFC assessment.   Therefore, the ALJ provided

good reasons for assigning Dr. Lopez's opinion little weight.[8]

By contrast, the ALJ relied heavily on the clinical observations of Plaintiff's work

hardening program therapists.   A physical therapist is not an "acceptable medical source"

as defined in the social security regulations.   20 C.F.R. § 404.1513.   "Nonetheless, a

---

a doctor's finding that plaintiff was totally disabled for workers' compensation claim was not binding on the Commissioner because of the differences in the definitions of disability); *Vergino v. Apfel*, No. 97-CV-456, 1998 WL 743706, at *7-8 (N.D.N.Y. Oct. 23, 1998) (finding plaintiff not precluded from performing work, despite doctor's opinions that he was partially disabled for purposes of workers' compensation claim). As a result, Dr. Lopez's findings of "total disability" may well have been in reference to Plaintiff's inability to return to his past work as a construction laborer.   The ALJ did not contest this finding, but determined that there was other light work that Plaintiff could perform.   (Tr. 20).   Dr. Lopez did not provide an opinion or function report for the purposes of Plaintiff's social security claim.

[8]      The ALJ also discussed the opinion of "Dr. Stuart." (Tr. 20).   The Court notes that the full name of Dr. Lopez is Dr. Rafael Lopez Steuart. (Tr. 330).   Therefore, it appears that the ALJ was discrediting another opinion of Dr. Lopez.   Although the ALJ had the incorrect name of the doctor, this is a harmless error.   The ALJ's analysis of "Dr. Stuart's" opinion discredits the opinion, and therefore further supports the ALJ's assignment of less weight to Dr. Lopez's opinion.   The ALJ noted that "Dr. Stuart's" opinion claimed that Plaintiff's condition was worsening despite objective clinical findings in the doctor's own treatment notes that Plaintiff's physical function had improved. (Tr. 20).   "Dr. Stuart" opined that Plaintiff was not fit for work despite objective medical evidence that Plaintiff's range of motion had improved, and despite Plaintiff's own statements to the doctor that he had a 20% improvement in pain. (*Id.*).   In light of the evidence and Plaintiff's own statements, the ALJ provided good reasons for discrediting this opinion.   Because the ALJ also discredited the "Dr. Stuart" opinion, the ALJ's error in misidentifying Dr. Lopez is harmless, as the ALJ's decision would not change with the correct identification. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency consideration.") (internal quotation omitted).

- 19 -

physical therapist is an 'other source' whose opinion the ALJ may consider regarding the severity of a claimant's impairment and how it affects the claimant's ability to work." *Sixberry v. Colvin*, No. 7:12-CV-1231(GTS), 2013 WL 5310209, at *8 (N.D.N.Y. Sept. 20, 2013); 20 C.F.R. § 404.1513(d)(1). Although physical therapists are not acceptable medical sources, the opinions of physical therapists may constitute substantial evidence where the opinions are well documented and supported by the medical evidence. *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug 9, 2006).

> An opinion from a "non-medical source" who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source. For example, this could occur if the "non-medical source" has seen the individual more often and has greater knowledge of the individual's functioning over time and if the "non-medical source's" opinion has better supporting evidence and is more consistent with the evidence as a whole.

*Id.* "In considering the opinion of a physical therapist, the ALJ can utilize the same factors used to assess medically acceptable opinions. . . ." *Bulger v. Astrue*, No. 6:07-CV-542, 2009 WL 1924767, at *11 (N.D.N.Y. July 1, 2009). "[T]he adjudicator generally should explain the weight given to opinions from 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* (quoting SSR 06-03p, 2006 WL 2329939, at *6). "[T]he ALJ has the discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him. . . ." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995).

Here, in considering the opinions of the Rehab At Work physical therapists, the ALJ carefully described the supporting observations recorded by the physical therapists. (Tr. 18). The ALJ discussed Ms. Center's opinion that Plaintiff was self-limiting as well as her conclusion that there were "negligible objective findings" to support Plaintiff's reported pain levels. (*Id.*). The ALJ noted that the physical therapists opined that Plaintiff was not demonstrating his true maximum ability, and that Plaintiff was able to perform full light duty work with three hours of medium level work by the end of his work hardening program. (*Id.*). As the ALJ notes, these opinions and observations were supported by objective findings, including Plaintiff's 11 to 20 pound increase in his lifting and carrying ability. (*Id.*). The opinions of the physical therapists at Rehab At Work extensively outlined the medical support for their opinions as to Plaintiff's functional limitations. Based on the opinions of the physical therapists, the ALJ determined that "[Plaintiff's] demonstrated functional abilities . . . weigh heavily against a finding that the [Plaintiff's] musculoskeletal impairment is of the severity alleged." (Tr. 20). Because the opinions were well-documented and well-reasoned, these opinions provided substantial evidence to support the ALJ's conclusion that Plaintiff was capable of performing a reduced range of light work, and the ALJ did not err in relying on the opinions. *Cf. Colon v. Astrue*, No. 09-CV-6527, 2010 WL 2925969, at *3 (W.D.N.Y. July 23, 2010) (finding ALJ's reliance on physical therapist's function report over opinion of treating physician reversible error where ALJ did not clearly explain reasons for failing to give treating physician controlling weight).

## ii.     Credibility Assessment

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence.  *Brownell v. Comm'r of Soc. Sec.*, No. 1:05-CV-0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009).  First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a).  Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole.   20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Here, in considering Plaintiff's credibility, the ALJ properly applied the two step analysis.  First, the ALJ determined that, "[a]fter careful consideration of the evidence . . . the claimant[']s medically determinable impairment could reasonably be expected to cause the alleged symptoms. . . ." (Tr. 16).  However, the ALJ determined at the second step that the objective medical evidence did not substantiate Plaintiff's alleged symptoms. (*Id.*).  Further, the ALJ found that Plaintiff's statements were not fully credible because the medical record did not show that Plaintiff's condition was as serious as Plaintiff alleged. (*Id.*).

- 22 -

Plaintiff has consistently claimed that significant lower back pain renders him disabled.   The medical record as a whole demonstrates that Plaintiff does have degenerative changes in his spine.   The ALJ's findings acknowledge that Plaintiff's degenerative disc disease is severe.   However, the record also supports the ALJ's findings that Plaintiff's lower back pain is not as debilitating as Plaintiff claims.   As a result, the ALJ's credibility finding was supported by substantial evidence in the record.

"'It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant.'" *Aponte v. Sec'y, Dep't Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982)). "The ALJ 'has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . . [which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.'" *King v. Astrue*, No. 12-CV-6186T, 2013 WL 3154129, at *8 (W.D.N.Y. June 21, 2013) (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)) (alteration in original). "If 'after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that decision is supported by substantial evidence.'" *Drennen v. Astrue*, No. 10-CV-6007MAT, 2012 WL 42496, at *6 (W.D.N.Y. Jan. 9, 2012) (quoting *Pascariello v. Heckler*, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)).

Here, in considering Plaintiff's credibility, the ALJ fully summarized the entirety of Plaintiff's hearing testimony. (Tr. 15-16).  Notably, although Plaintiff claimed that he

could not lift more than 10 pounds, and could not stand for more than 25 minutes or walk for more than 30 minutes at a time, Plaintiff stated that he exercises daily, cleans his room, and walks around his neighborhood. (Tr. 17). Plaintiff testified that he prepares his own meals, does his own laundry, goes grocery shopping alone, and drives a car. (*Id.*). Plaintiff's own statements of self-sufficiency undermine his allegations that he is totally disabled. Rather, this testimony supports a finding that Plaintiff is capable of performing some light work.

Plaintiff also testified that he received pain relief from over-the-counter medications like Advil and Tylenol. (Tr. 61-62, 221, 337, 375). *See* 20 C.F.R. § 404.1529(c)(3)(iv). Further, Plaintiff stated that he experienced improved back pain by 20% after Dr. Lopez administered facet joint injections and trigger point injections to Plaintiff's spine on October 8, 2007, and January 15, 2009, respectively. (Tr. 336, 346). *See* 20 C.F.R. § 404.1529(c)(3)(v).

Treatment notes from Plaintiff's physical therapists showed that Plaintiff was capable of light work before he even began physical therapy sessions. (Tr. 319). During Plaintiff's physical therapy sessions, he was noted to report his limitations to be limited to a sedentary level, despite the fact that he was actually performing at a light exertional level. (Tr. 320). By the end of Plaintiff's work hardening program, he was lifting 17.5 to 35 pounds, which placed him at a medium exertional level. (Tr. 311).

As the ALJ noted, even treatment notes from Dr. Lopez, who opined that Plaintiff was totally disabled, reported that Plaintiff was experiencing an improvement in his pain

and had received pain relief from over the counter medications and spinal injections. (*See* Tr. 335-37).

Plaintiff's own testimony, in combination with the medical evidence, undermines Plaintiff's credibility as to the severity of symptoms alleged. Therefore, the ALJ did not err in finding Plaintiff's testimony to be less credible. "Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner." *Williams*, 423 F. Supp. 2d at 84.

5. **Step Five: Jobs in the National Economy for Plaintiff to Perform**

At the fifth step, the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of a light level of work was impeded by additional limitations. (Tr. 21). Therefore, the ALJ posed hypothetical questions to the VE concerning an individual with Plaintiff's age, education, work experience, and RFC to determine if there were jobs in the national economy in significant numbers that Plaintiff could perform. (Tr. 21-22). The ALJ relied on the VE's testimony to conclude that Plaintiff could perform jobs existing in the national economy, including laundry folder, finish inspector, and small product assembler. (*Id.*). The ALJ noted that the VE testified that there may be a 10% reduction, but no significant change, in the light occupational job base if the individual had a "marginal education and was functionally literate in the English language." (Tr. 22). In light of these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (*Id.*).

Because the ALJ's RFC was supported by substantial evidence, and because the ALJ did not commit legal error in evaluating Plaintiff's claim, the Court finds that the ALJ properly relied on the VE testimony to find that there are significant jobs in the national economy that Plaintiff can perform, and that Plaintiff is therefore not disabled within the meaning of the Act. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (finding the ALJ properly relied on the VE's responses to a hypothetical that was based on the ALJ's substantially supported RFC assessment).

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted.  Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:         May 19, 2014
               Rochester, New York

- 26 -